**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

KATHLENE L. KUROWICKI, Individually and as Personal Representative of the Estate of BARNEY CHESTER KUROWICKI a/k/a BARNEY C. KUROWICKI, Deceased,

Plaintiff,

vs.

BUCKEYE TRANSPLANT SERVICES, LLC; JOHN DOE PHYSICIANS 1-5; LIFECENTER NORTHWEST; and, JOHN DOE PHYSICIANS 6 THROUGH 10,

Defendants.

No.:

JUDGE:

**COMPLAINT**

Code:

Filed on Behalf of Plaintiff: Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased.

Counsel of Record for this Party:

ROBERT F. DALEY, ESQUIRE
Ohio I.D. No.: 079006
bdaley@peircelaw.com

DAVID A. MARTIN, ESQUIRE
Ohio I.D. No.: 103082
dmartin@peircelaw.com

ROBERT PEIRCE & ASSOCIATES, P.C.
437 Grant Street
Suite 1100
Pittsburgh, PA 15219
(412) 281-7229

**JURY TRIAL DEMANDED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

KATHLENE L. KUROWICKI, Individually and as Personal Representative of the Estate of BARNEY CHESTER KUROWICKI a/k/a BARNEY C. KUROWICKI, Deceased,

Plaintiff,

vs.

BUCKEYE TRANSPLANT SERVICES, LLC; JOHN DOE PHYSICIANS 1 THROUGH 5; LIFECENTER NORTHWEST; and JOHN DOE PHYSICIANS 6 THROUGH 10,

Defendants.

No.:

## COMPLAINT

AND NOW, comes the Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, by and through her undersigned counsel, Robert F. Daley, Esquire; David A. Martin, Esquire; and the law firm of Robert Peirce & Associates, P.C., and claims damages of the Defendants, Buckeye Transplant Services, LLC; John Doe Physicians 1 through 5; LifeCenter Northwest; and John Doe Physicians 6 through 10, upon causes of action, the following of which are statements:

## INTRODUCTION

This is a medical malpractice action brought by the Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased pursuant to 28 U.S.C. § 1332 because complete diversity exists between the Plaintiff (an Estate raised in the State of Michigan for a deceased citizen of the State

of Michigan) and the Defendants, Buckeye Transplant Services, LLC (citizens of Delaware and New York) and LifeCenter Northwest (citizens of Washington) and their respective employees, agents, or ostensible agents (designated as "John Doe Physicians 1 through 5" and "John Doe Physicians 6 through 10").

## JURISDICTION AND VENUE

Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the State of Michigan. Defendant Buckeye Transplant Services, LLC is a citizen of Delaware and New York, and Defendant LifeCenter Northwest is citizen of the State of Washington. Accordingly, complete diversity exists. The identities and citizenship of John Doe Physicians 1 through 5 and John Doe Physicians 6 through 10 are presently unknown; however, the citizenship of John Doe Defendants is disregarded for purposes of establishing diversity jurisdiction. Further, the amount in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000.00.

Venue in the Northern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio.

## PARTIES

1. Plaintiff Kathlene L. Kurowicki is an adult individual who resides at 1033 Preservation Drive, Tecumseh, MI 49286.

2. Plaintiff Kathlene L. Kurowicki was appointed Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased by the Probate Court of Lenawee County, Michigan on August 5, 2025.

3. Plaintiff Kathlene L. Kurowicki brings this action against Defendant Buckeye Transplant Services, LLC pursuant to Ohio R.C. § 2305.21 and Ohio R.C. § 2125.01, on behalf of the Estate of Barney C. Kurowicki, on her own behalf, and on behalf of Barney C. Kurowicki's children, Erin Simone, Adam Kurowicki, Sara Strassner, and Jill Heilmann, all of whom are Wrongful Death beneficiaries pursuant to Ohio R.C. § 2125.02.

4. Defendant Buckeye Transplant Services, LLC (hereinafter "Defendant Buckeye" or "Buckeye") is a limited liability company organized under the laws of Ohio. Defendant Buckeye operates a principal place of business located at 12224 Road K, Ottawa, OH, 45875-9442.

5. Defendant Buckeye's sole member is Transplant Advancement USA Inc., a corporation organized under the laws of Delaware. Transplant Advancement USA Inc. operates with its principal place of business in Buffalo, New York.

6. Accordingly, Defendant Buckeye's citizenship is in the state of Delaware and New York as that is the citizenship of its sole member.

7. Transplant Advancement USA Inc. maintains citizenship in both Delaware and New York.

8. John Doe Physicians 1 through 5 are employees, agents, or ostensible agents of Buckeye Transplant Services, LLC who, while acting within the course and scope of their employment or ostensible agency with Buckeye Transplant Services, LLC participated in, supervised, or were otherwise responsible for the procurement, evaluation, clearance, allocation, and/or transportation of the donor kidney transplanted into Mr. Kurowicki. Plaintiff will seek to ascertain the identities of John Does 1 through 5 through discovery and will amend this Complaint to allege the true names and capacities of these John Doe Defendants once discovered.

9. Plaintiff brings this action against Defendant Buckeye and John Doe Physicians 1 through 5 pursuant to the laws of the State of Ohio.

10. Defendant LifeCenter Northwest (hereinafter "Defendant LifeCenter" or "LifeCenter) is a non-profit organization and organ procurement organization organized under the laws of the State of Washington. Defendant LifeCenter maintains a principal place of business located at 3650 131st Avenue SE, Suite 200, Bellevue, WA 98006.

11. John Doe Physicians 6 through 10 are employees, agents, or ostensible agents of LifeCenter Northwest who, while acting within the course and scope of their employment or ostensible agency with LifeCenter Northwest, participated in, supervised, or were otherwise responsible for the procurement, evaluation, clearance, allocation, and/or transportation of the donor kidney transplanted into Mr. Kurowicki. Plaintiff will seek to ascertain the identities of John Does 6 through 10 through discovery and will amend this Complaint to allege the true names and capacities of these John Doe Defendants once discovered.

12. Plaintiff brings this action against Defendant LifeCenter and John Doe Physicians 6 through 10 pursuant to the laws of the State of Washington. In the alternative, Plaintiff brings this action against Defendant LifeCenter and John Doe Physicians 6 through 10 pursuant to the laws of the State of Ohio.

## STATEMENT OF FACTS

13. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

14. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

*Facts Specific to The Role of Buckeye Transplant Services, LLC*

15. According to its website, Defendant Buckeye identifies itself as a partner "…with transplant centers, research facilities, and OPOs across the country to manage organ offers through donor screening, organ call coverage, transportation coordination, donor management, facilitation of organ recovery and transplantation processes, waitlist management, and transplant patient calls." [1]

16. In a lawsuit filed by Defendant Buckeye in the United States District Court for The Eastern District of Virginia, Richmond Division, Defendant Buckeye identified its role in the transplant process as working "…hand-in-glove with transplant centers to evaluate available organs and maximize the effectiveness of their organ transplant programs, and accesses the OPTN through UNOS' systems on behalf of the transplant centers to perform these essential services." [2]

17. The OPTN is the Organ Procurement and Transplantation Network and it is the network in which transplant centers receive information regarding available organs.

18. UNOS is the United Network for Organ Sharing and it operates the OPTN.

19. Defendant Buckeye further defined its role in the transplant process, indicating that it "…assists its clients in the process of evaluating and responding to organ offers by receiving notifications of new offers, evaluating data regarding the available organ, and identifying acceptable offers based upon the criteria established by the client transplant center." [3]

---

[1] https://www.buckeyetransplant.com/about

[2] Buckeye Transplant Services, LLC v. United Network for Organ Sharing filed at 3:23-cv-00427 in the United States District Court for The Eastern District of Virginia, Richmond Division at paragraph 7 of Plaintiff Buckeye's Complaint.

[3] Buckeye Transplant Services, LLC v. United Network for Organ Sharing filed at 3:23-cv-00427 in the United States District Court for The Eastern District of Virginia, Richmond Division at paragraph 27 of Plaintiff Buckeye's Complaint.

20. Moreover, according to Defendant Buckeye's website, "Our coordinators have extensive organ placement and transplant experience, made up of registered nurses, respiratory therapists, and procurement transplant coordinators." [4]

21. Upon information and belief, some or all of the individuals who participate in, supervise, or are otherwise responsible for the procurement, evaluation, clearance, allocation, and/or transportation of organs on behalf of Buckeye are also physicians.

*Facts Specific to The Role of LifeCenter Northwest*

22. Defendant LifeCenter is an organ procurement organization (OPO) responsible for recovering organs from deceased donors for transplantation.

23. As an OPO, Defendant LifeCenter communicates with hospitals to assist in the assessment of potential donors while also managing and coordinating the transplant process with the Organ Transplant and Procurement Network (OTPN).

24. According to Defendant LifeCenter's website, "We work closely with more than 200 partner hospitals to maximize donation opportunities so that together we can save and improve more lives across our region. Our Hospital Development team provides ongoing education for hospital staff on organ and tissue donation guidelines and procedures, to ensure that they always recognize and refer potential donors." [5]

25. Specifically, Defendant LifeCenter gathers and enters data regarding a particular donor, including but not limited to, their blood type, height and weight and their location into the OPTN.

---

[4] https://www.buckeyetransplant.com/about

[5] https://lcnw.org/about/

26. This information regarding the donor is then shared over the OPTN to transplant centers and transplant surgeons.

27. Upon information and belief, some or all of the individuals who participate in, supervise, or are otherwise responsible for the procurement, evaluation, clearance, allocation, and/or transportation of organs on behalf of LifeCenter are physicians.

*Facts Common to All Causes of Action*

28. In October of 2022, Barney C. Kurowicki (hereinafter "Mr. Kurowicki), started dialysis due to renal disease.

29. In early November of 2024, now at the age of 76 years old, Mr. Kurowicki presented to the University of Toledo Medical Center (hereinafter "UTMC") for a cardiac evaluation to determine whether he might be a candidate for a kidney transplant.[6]

30. Following his early November of 2024 testing, Mr. Kurowicki returned to UTMC on November 26, 2024, for his annual transplant re-evaluation.

31. On December 5, 2024, following a multidisciplinary evaluation and a series of testing in the month preceding, Mr. Kurowicki was listed for a kidney transplant.

32. At the time Mr. Kurowicki was listed for kidney transplant, he was identified as a blood type O candidate with an anticipated waiting time of over two (2) years dating back from the initiation of his dialysis.

33. Additionally, at the time of his transplant, he was assessed for an Estimated Post-Transplant Survival (EPTS) score.

[6] University of Toledo Medical Center (UTMC) and a number of its physicians are named Defendants in a separate action filed in the Ohio Court of Claims on behalf of the Plaintiff in the instant action.

34. An EPTS assessment is conducted by using factors such as age, dialysis duration and diabetes status to determine the likelihood of success of the kidney transplant.

35. An EPTS is also utilized to assist with the allocation and placement of donor kidneys.

36. The EPTS assessment score ranges from 0 – 100 with a lower score indicating a higher likelihood of a successful post-transplant survival for a period of 10 years.

37. Mr. Kurowicki's score was 98.

38. On December 9, 2024, just four (4) days after being listed on the kidney transplant list, a deceased donor kidney was offered by Defendant LifeCenter.

39. The United Network for Organ Sharing (UNOS) maintains a DonorNet database to provide data to OPOs and transplant centers in an effort to match organs to transplant candidates.

40. According to the DonorNet records, as it relates to Mr. Kurowicki's donor, he was a 59-year-old man who passed away at Kootenai Health in Coeur d'Alene, Idaho, from a cardiac arrest secondary to anoxia and cardiovascular collapse.

41. The donor was assessed using the Kidney Donor Profile Index (KDPI) and was scored a 77%.

42. The KDPI is a measure of a deceased's donor's organ quality, with a range of 1% to 100%, with a greater KDPI indicating an organ at a greater risk for early allograft failure.

43. An organ that is at a greater risk for early allograft failure means that the organ is more likely to suffer from poor initial function following transplantation.

44. According to documentation, a Donor Risk Assessment Interview (DRAI) was conducted with the next of kin of the donor.

45. The DRAI is a Centers for Medicare and Medicaid Services requirement to obtain from the next of kin, a medical and psychosocial history with the OPO, in this instance, Defendant LifeCenter.

46. According to the DRAI, the donor was noted to be "delirious" prior to his cardiac arrest event.

47. Of utmost importance, the DonorNet record also indicated that the decedent donor was recently scratched by a skunk.

48. It was also noted in the DonorNet record that the decedent donor did not receive treatment for the skunk scratch and that the skunk was "not suspected to have rabies but was not quarantined nor tested." In other words, rabies was never ruled out.

49. Following the donor's death but before UTMC accepted the donor kidney, the kidney itself was declined by all blood type O recipients above him on the transplant list.

50. According to the record, Mr. Kurowicki was national sequence number 12,244.

51. UTMC utilized Defendant Buckeye to initially evaluate the offer, collect pertinent donor screening data, and then to facilitate communication with UTMC transplant surgeon, Dr. Obi Ekwenna.[7]

52. Upon information and belief, those

53. At all times pertinent hereto, Dr. Obi Ekwenna (hereinafter "Dr. Ekwenna") was a transplant surgeon specializing in urology at Defendant UTMC.

[7] Dr. Obi Ekwenna is a named Defendant in a separate action filed in the Ohio Court of Claims on behalf of the Plaintiffs in the instant action.

54. According to email transmissions from Defendant Buckeye Transplant coordinator, John Grondwalski, and Dr. Ekwenna, Defendant Buckeye Transplant shared with Dr. Ekwenna the information regarding the kidney.

55. Dr. Ekwenna expressed interest in the donor kidney and accepted the kidney for Mr. Kurowicki.

56. The information regarding the donor's recent skunk scratch was included in the information provided to the transplant team at UTMC.

57. Upon reviewing the records from UTMC, no additional testing was conducted on the kidney following its arrival for transplant.

58. On December 10, 2024, Mr. Kurowicki underwent a kidney transplant at UTMC.

59. In addition to Dr. Ekwenna, Dr. David Valancy (hereinafter "Dr. Valancy"), and Dr. Michael Rees (hereinafter "Dr. Rees"), assisted during Mr. Kurowicki's kidney transplant.[8]

60. More specifically, Dr. Valancy assisted Dr. Ekwenna and Dr. Rees performed the "backtable preparation" of the donor kidney.

61. Nonetheless, Dr. Ekwenna was the "primary" surgeon for Mr. Kurowicki and was noted to be present at all times during the transplant procedure.

62. Again, of utmost importance, neither Mr. Kurowicki nor his family were ever advised of the potential for rabies transmission from the donor, nor were they told the donor had an encounter with a skunk and rabies had not been ruled out.

63. This information was readily available and shared between all Defendants.[9]

---

[8] Both Dr. Michael Rees and Dr. David Valancy are named Defendants in a separate action filed in the Ohio Court of Claims on behalf of the Plaintiffs in the instant action.

[9] The reference to "All Defendants" includes all Defendants named in the instant action and in the separate action filed in the Ohio Court of Claims on behalf of the Plaintiffs in the instant action.

64. Following Mr. Kurowicki's kidney transplant, he experienced post-operative complications including, but not limited to, delay graft function (DGF) and mild bleeding from the surgical site.

65. After Mr. Kurowicki's transplant, he started maintenance immunosuppression of Envarus and Myfortic and was discharged on POD 3.

66. Mr. Kurowicki also underwent standard infection prophylaxis including Bactrim, Clotrimazole and Valcyte.

67. Mr. Kurowicki was also restarted on his necessary pre-operative/transplant medications.

68. Mr. Kurowicki was also placed on Bumex to address increased diuresis.

69. On or around December 13, 2024, Mr. Kurowicki was discharged from UTMC.

70. Mr. Kurowicki was never given post-exposure prophylaxis for rabies during the hospitalization at UTMC.

71. Mr. Kurowicki presented to an outpatient clinic, on or around December 16, 2024, with complaints of renal dysfunction, poor appetite, fatigue and weight loss.

72. Mr. Kurowicki also complained of excessive diarrhea.

73. Over the next two weeks, Mr. Kurowicki continued with ongoing diarrhea and generalized fatigue, resulting in him being admitted to UTMC on January 2, 2025, for dehydration.

74. Following his admission to UTMC, he continued with watery stools and was ultimately diagnosed with C. difficile.

75. While his kidney function did show slight improvement, while at the hospital, Mr. Kurowicki's creatinine levels were elevated at 5.72 mg/dl.

76. These elevated creatinine levels were indicative of an issue with Mr. Kurowicki's kidneys.

77. Over the course of his hospitalization at UTMC, his creatinine levels worsened requiring an allograft biopsy.

78. While the results of the biopsy did not indicate rejection, the biopsy did indicate significant fibrosis and sclerosis consistent with donor disease.

79. During this hospitalization, the staff at UTMC did share their concerns for primary nonfunction or early allograft failure with Mr. Kurowicki.

80. On January 9, 2025, Mr. Kurowicki was discharged from UTMC.

81. While at home, Mr. Kurowicki continued with outpatient diuretics.

82. On or around January 20, 2025, Mr. Kurowicki presented to the emergency department at UTMC with complaints of shortness of breath, generalized weakness and lower extremity pain and swelling.

83. After a series of tests, Mr. Kurowicki was given Bumex and discharged to home.

84. Overnight, Mr. Kurowicki's condition worsened, and he was admitted to ProMedica Toledo Hospital on January 21, 2025, where he underwent additional testing.

85. Following testing at ProMedica Toledo Hospital that indicated elevated troponins, it was determined that Mr. Kurowicki required specialized services due to his recent kidney transplant, and he was transferred to UTMC on January 22, 2025.

86. According to laboratory studies conducted upon his presentation to the emergency department at UTMC, Mr. Kurowicki once again exhibited elevated troponins levels, consistent with an acute cardiac event.

87. Once at UTMC, his condition rapidly deteriorated.

88. At or around that time, Mr. Kurowicki's creatinine levels were 6.22 mg/dL.

89. Mr. Kurowicki was also noted to be experiencing significant disorientation.

90. An EEG demonstrated mild to moderate diffuse encephalopathy and Mr. Kurowicki was placed on continuous EEG monitoring.

91. Mr. Kurowicki was also started on emergent dialysis due to his worsening uremia.

92. In the evening of January 23, 2025, Mr. Kurowicki was transferred to the intensive care unit (ICU).

93. Mr. Kurowicki remained in the ICU and on January 24, 2025, he was intubated due to his increased obtundation and failure to protect his airway.

94. It was also noted around that same time that the dialysis failed to improve his neurologic function.

95. For the next several days, Mr. Kurowicki underwent a series of testing, including, but not limited to, lumbar puncture and multiple MRIs of his head.

96. During this same time, Mr. Kurowicki was started on broad spectrum antibiotics and empiric IVIg therapy for potential encephalitis.

97. Eventually, and long after Mr. Kurowicki's condition was already in a dire state, the infectious disease team at UTMC brought concerns for donor-derived infections including rabies.

98. Around that same time, rabies testing began of Mr. Kurowicki.

99. According to the record, the staff at UTMC consulted with the Ohio Health Department (OHD) and the Center for Disease Control (CDC).

100. Multiple saliva, serum and CSF samples were collected.

101. On January 28, 2025, a general surgeon completed an excisional skin biopsy of Mr. Kurowicki's posterior neck.

102. Over the next day or so, Mr. Kurowicki's condition continued to significantly decline with his loss of brainstem reflexes.

103. Upon discussions with Mr. Kurowicki's family and the staff at UTMC, the decision was made to change Mr. Kurowicki's code status to Do Not Resuscitate (DNR), and withdrawal of support was requested.

104. Mr. Kurowicki was provided comfort care, and he died on January 30, 2025.

105. The Immunohistochemistry on the tissue submitted for testing was positive for rabies virus as were both the IgG and IgM anti-rabies antibodies on all blood and CSF samples.

106. Following Mr. Kurowicki's death, an autopsy was performed by Dr. Carl Schmidt, a Deputy Coroner at the Office of the Lucas County Coroner.

107. The autopsy demonstrated pathognomonic Negri inclusion bodies in the infection, confirming the suspicion of a donor derived infection at the time of organ transplantation.

108. All Defendants knew or should have known the donor was scratched by a skunk that was not quarantined and/or tested for rabies.[10]

109. All Defendants knew or should have known the donor's next of kin described him as "delirious" before his cardiac arrest.

110. All Defendants knew or should have known it was possible that the donor's kidney was infected with rabies and knew or should have known that rabies had not been ruled out in the donor (or the skunk).

[10] Again, the reference to "All Defendants" includes all Defendants named in the instant action and in the separate action filed in the Ohio Court of Claims on behalf of the Plaintiffs in the instant action.

111. Mr. Kurowicki and his family knew none of this prior to his transplant and were never informed of the risks of receiving an organ that is potentially infected with rabies.

112. Mr. Kurowicki's received a kidney infected with rabies.

113. Mr. Kurowicki died of rabies transmitted from the rabies laden donor kidney.

## CAUSES OF ACTIONS

### FIRST CAUSE OF ACTION AGAINST DEFENDANT BUCKEYE TRANSPLANT SERVICES, LLC

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. Buckeye Transplant Services, LLC**

### RESPONDEAT SUPERIOR/VICARIOUS LIABILITY - NEGLIGENCE

114. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

115. At all times material and relevant hereto, Defendant Buckeye acted by and through its agents, ostensible agents, servants, and/or employees, including, but not limited to, John Doe Physicians 1 through 5.

116. The agents, ostensible agents, servants, and/or employees of Defendant Buckeye had a duty to protect Barney C. Kurowicki from harm.

117. Defendant Buckeye is directly and vicariously liable for the acts, commissions, or omissions of its agents, ostensible agents, servants and/or employees, including John Doe Physicians 1 through 5, as though Defendant Buckeye performed the acts, commissions, and/or omissions itself.

118. Defendant Buckeye, as well as its authorized agents, ostensible agents, servants, and/or employees, negligently breached their duties to Barney C. Kurowicki in the following particulars:

a. By failing to properly communicate with all parties involved in the finding, assessing and coordination of Mr. Kurowicki's transplanted kidney, as pled herein;

b. By failing to recognize there was a reason so many other recipients declined the transplanted kidney, as pled herein;

c. By continuing to attempt to coordinate an organ match when so many other recipients declined the transplanted kidney, as pled herein;

d. By coordinating the organ match for a donor kidney with rabies, as pled herein;

e. By failing to communicate to Mr. Kurowicki and/or his family that the kidney he was receiving was declined by many prior potential recipients, as pled herein;

f. By failing to recognize Mr. Kurowicki's increased risk for harm for receiving a kidney that had been declined by many prior potential recipients, as pled herein;

g. By ignoring the fact that the donor had an encounter with a skunk, ignoring that rabies was not ruled out and coordinating a transplant of the rabies infected kidney regardless, as pled herein;

h. By failing to follow protocols in place for accepting appropriate organs for safe transplantation, as pled herein;

i. By failing to properly and/or adequately select, train, and supervise their respective agents, ostensible agents, servants, employees, and staff personnel, as pled herein; and,

j. By causing and increasing the harm to Mr. Kurowicki as a result of the negligence as set forth herein.

119. As a direct and proximate result of the negligence of Defendant Buckeye authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki was injured and experienced conscious pain and suffering.

120. As a direct and proximate result of the negligence of Defendant Buckeye authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki suffered from rabies, prolonged hospitalization, invasive surgery, multiple readmissions to the hospital, intensive treatment, and significant pain and suffering.

121. As a direct and proximate result of the negligence of Defendant Buckeye's authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki has in the past experienced and endured pain, suffering, inconvenience, irritation, annoyance, fright, shock, worry, humiliation, anxiety, and other forms of distress; impairment of the movement of the various parts of his body; the loss of the ability to engage in his usual activities; the loss of income; the impairment of earning capacity; the impairment of general health, strength and vitality; the requirement of additional treatments and medication; and, the loss of the enjoyment of the daily pleasures of life.

122. As a direct and proximate result of the aforementioned acts and omissions of Defendant Buckeye, Plaintiff Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, seeks damages as follows:

a. Money expended for past and future medical services and supplies incident to the treatment Mr. Kurowicki received as a result of the negligence of the Defendant;

b. Shock, fright, anxiety, pain, suffering, embarrassment, humiliation, inconvenience, diminished enjoyment and

quality of life, and nervousness suffered by Mr. Kurowicki as a result of the negligence of the Defendant;

c. Any and all economic losses, including income loss, sustained by Mr. Kurowicki incident to treatment for his injuries; and,

d. Any and all other damages allowed under the law.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of the Defendant Buckeye Transplant Services, LLC, and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**SECOND CAUSE OF ACTION AGAINST DEFENDANT BUCKEYE TRANSPLANT SERVICES, LLC**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. Buckeye Transplant Services, LLC**

**CORPORATE NEGLIGENCE**

123. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

124. At all times material and relevant hereto, Defendant Buckeye had a duty to exercise ordinary and reasonable care in the organization, management, and administration of its company, including the duty to adopt, implement, and enforce policies and procedures reasonably designed to protect individuals waiting for an organ transplant.

125. Defendant Buckeye negligently breached its duties to Mr. Kurowicki in the following particulars:

a. In failing to establish, implement, or enforce proper protocols to ensure the safety of individuals such as Mr. Kurowicki, as pled herein;

b. In failing to establish, implement, or enforce proper policies and procedures regarding communication, collaboration, and coordination between all parties involved in transplants, as pled herein;

c. In failing to properly instruct its agents, ostensible agents, servants and/or employees with respect to identification and communication of potential risks of harm, including, but not limited to a donor kidney infected with rabies, as pled herein;

d. In failing to ensure appropriate communication, collaboration, and coordination between all parties involved in transplants, as pled herein;

e. By having inappropriate polices, procedures and protocols that, somehow, someway, failed to identify and prevent transplantation of a rabies infected kidney – when the words "rabies" and "skunk" were actually present in the donor information, as pled herein;

f. In negligently supervising, hiring, credentialing, and/or retaining staff, as pled herein;

g. In allowing systemic breakdowns to occur, such that individuals such as Mr. Kurowicki were placed in a situation that increased his risk for harm, as pled herein; and,

h. By improperly holding itself out to the community as a company having all the necessary and qualified staff, and competence to properly service individuals in need of an organ transplant, and in particular, Mr. Kurowicki, as pled herein.

126. As a direct and proximate result of the negligence of Defendant Buckeye, Barney C. Kurowicki was injured and experienced conscious pain and suffering.

127. As a direct and proximate result of the negligence of Defendant Buckeye, Mr. Kurowicki suffered from rabies, prolonged hospitalization, invasive surgery, multiple readmissions to the hospital, intensive treatment, and significant pain and suffering.

128. As a direct and proximate result of the negligence of Defendant Buckeye, Barney C. Kurowicki has in the past experienced and endured pain, suffering, inconvenience, irritation, annoyance, fright, shock, worry, humiliation, anxiety, and other forms of distress; impairment of the movement of the various parts of his body; the loss of the ability to engage in his usual activities; the loss of income; the impairment of earning capacity; the impairment of general health, strength and vitality; the requirement of additional treatments and medication; and, the loss of the enjoyment of the daily pleasures of life.

129. As a direct and proximate result of the negligence of Defendant Buckeye, Plaintiff Kathlene L. Kurowicki, as Administratrix of the Estate of Barney C. Kurowicki, Deceased, seeks damages as follows:

a. Money expended for past and future medical services and supplies incident to the treatment Mr. Kurowicki received as a result of the negligence of the Defendant;

b. Shock, fright, anxiety, pain, suffering, embarrassment, humiliation, inconvenience, diminished enjoyment and quality of life, and nervousness suffered by Mr. Kurowicki as a result of the negligence of the Defendant;

c. Any and all economic losses, including income loss, sustained by Mr. Kurowicki incident to treatment for his injuries; and,

d. Any and all other damages allowed under the law.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased,

claims damages of the Defendant Buckeye Transplant Services, LLC, and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT BUCKEYE TRANSPLANT SERVICES, LLC**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. Buckeye Transplant Services, LLC**

**WRONGFUL DEATH**

130. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

131. All of the actions and/or inactions of Defendant Buckeye, as described above, as well as the breaches of the duties owed to Barney C. Kurowicki, increased the risk of harm to him and caused his death on January 30, 2025.

132. The persons entitled by law to recover damages for Barney C. Kurowicki's wrongful death, have sustained the following damages and losses:

a. All money expended for funeral and estate expenses because of the death of Mr. Kurowicki;

b. Loss of support from the reasonably expected earning capacity of the decedent;

c. Loss of services of the decedent;

d. Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training,

and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

e. Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death; and,

f. The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of the Defendant Buckeye Transplant Services, LLC, and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT BUCKEYE TRANSPLANT SERVICES, LLC**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. Buckeye Transplant Services, LLC**

**RESPONDEAT SUPERIOR/VICARIOUS LIABILITY – MEDICAL NEGLIGENCE[11]**

133. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

134. At all times material and relevant hereto, Defendant Buckeye acted by and through its agents, ostensible agents, servants, and/or employees.

135. The agents, ostensible agents, servants, and/or employees of Defendant Buckeye had a duty to provide ordinary and reasonable care and care services to Barney C. Kurowicki.

[11] This count applies only to agents of Defendant Buckeye against whom a medical negligence claim would be inappropriate, i.e., those agents who fall within the definition of medical claim set forth in R.C. 2305.113, specifically including but without limitation nurses.

136. Defendant Buckeye is directly and vicariously liable for the acts, commissions, or omissions of its physicians, nursing staff, medical staff, and administration, including John Doe Physicians 1 through 5, as though Buckeye performed the acts, commissions, and/or omissions itself.

137. Defendant Buckeye, as well as its authorized agents, ostensible agents, servants, and/or employees, negligently breached their duties to Barney C. Kurowicki in the following particulars:

a. By failing to make appropriate medical decisions about the care of Mr. Kurowicki, as pled herein;

b. By failing to take the necessary medical measures needed by Mr. Kurowicki as it related to his kidney transplant, as pled herein;

c. By failing to recognize and appreciate the significance of the risks associated with transplanting a kidney from a donor with rabies, as pled herein;

d. By accepting a donor kidney with rabies, as pled herein;

e. By failing to recognize the signs and symptoms of rabies in its evaluation of the donor kidney, as pled herein;

f. By failing to communicate with the OPO and all other health providers involved with the care of the donor and the donor kidney after it was harvested from the donor, as pled herein;

g. By failing to appreciate critical information regarding the donor and donor kidney, including that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients before being offered to Mr. Kurowicki, as pled herein;

h. By failing to further investigate critical information regarding the donor and donor kidney, including that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined

by a list of over 12,000 other potential recipients before being offered to Mr. Kurowicki, as pled herein;

i. By accepting a donor kidney with the understanding that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients, as pled herein;

j. By failing to communicate to Mr. Kurowicki and/or his family that the kidney he was receiving was from a donor who was delirious before his death after being scratched by a skunk, and that the donor's kidney had been declined by a list of over 12,000 other potential recipients prior to being offered to him, as pled herein;

k. By attempting to match any recipient, and particularly Mr. Kurowicki, with a kidney that was previously declined by many prior potential recipients, indicating a potential problem with the kidney, as pled herein;

l. By attempting to match any recipient, and particularly Mr. Kurowicki, with a kidney that was harvested from a donor who was delirious before his death after being scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients, as pled herein;

m. By failing to collaborate as a team as it related to reconciling its knowledge of the donor and the donor kidney and Mr. Kurowicki's clinical symptomology following his kidney transplant, as pled herein;

n. By failing to recognize Mr. Kurowicki's risk for developing rabies, as pled herein;

o. By failing to follow widely accepted protocols in place for accepting appropriate organs for safe transplantation, as pled herein;

p. By failing to communicate and collaborate effectively with other medical personnel, contributing to Mr. Kurowicki receiving a kidney that should never have been transplanted, as pled herein;

q. By failing to supervise all persons who allowed a kidney infected with rabies to be transplanted in Mr. Kurowicki, as pled herein;

r. By failing to properly and/or adequately monitor the competency of the members of its medical, nursing and administrative staff and the adequacy of their knowledge as it relates to identifying risks with organ transplant, as pled herein;

s. By failing to properly and/or adequately select, train, and supervise their respective agents, ostensible agents, servants, employees, and staff personnel, as pled herein; and,

t. By causing and increasing the harm to Mr. Kurowicki as a result of the negligence as set forth herein.

138. As a direct and proximate result of the negligence of Defendant Buckeye's authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki was injured and experienced conscious pain and suffering.

139. As a direct and proximate result of the negligence of Defendant Buckeye's authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki suffered from rabies, prolonged hospitalization, invasive surgery, multiple readmissions to the hospital, intensive treatment, and significant pain and suffering.

140. As a direct and proximate result of the negligence of Defendant Buckeye's authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki has in the past experienced and endured pain, suffering, inconvenience, irritation, annoyance, fright, shock, worry, humiliation, anxiety, and other forms of distress; impairment of the movement of the various parts of his body; the loss of the ability to engage in his usual activities; the loss of income; the impairment of earning capacity; the impairment of general health, strength and vitality; the

requirement of additional treatments and medication; and, the loss of the enjoyment of the daily pleasures of life.

141. As a direct and proximate result of the aforementioned acts and omissions of Defendant Buckeye, Plaintiff Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, seeks damages as follows:

a. Money expended for past and future medical services and supplies incident to the treatment Mr. Kurowicki received as a result of the negligence of the Defendant;

b. Shock, fright, anxiety, pain, suffering, embarrassment, humiliation, inconvenience, diminished enjoyment and quality of life, and nervousness suffered by Mr. Kurowicki as a result of the negligence of the Defendant;

c. Any and all economic losses, including income loss, sustained by Mr. Kurowicki incident to treatment for his injuries; and,

d. Any and all other damages allowed under the law.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of the Defendant Buckeye Transplant Services, LLC, and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANT BUCKEYE TRANSPLANT SERVICES, LLC**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. Buckeye Transplant Services, LLC**

## WRONGFUL DEATH

142. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

143. All of the actions and/or inactions of Defendant Buckeye, as described above, as well as the breaches of the duty of care owed to Barney C. Kurowicki, increased the risk of harm to him and caused his death on January 30, 2025.

144. The persons entitled by law to recover damages for Barney C. Kurowicki's wrongful death, have sustained the following damages and losses:

a. All money expended for funeral and estate expenses because of the death of Mr. Kurowicki;

b. Loss of support from the reasonably expected earning capacity of the decedent;

c. Loss of services of the decedent;

d. Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

e. Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death; and,

f. The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of the Defendant Buckeye Transplant Services, LLC, and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of

suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**SIXTH CAUSE OF ACTION AGAINST JOHN DOE PHYSICIANS 1 THROUGH 5**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. John Doe Physicians 1 Through 5**

**MEDICAL MALPRACTICE/PROFESSIONAL LIABILITY**

145. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

146. John Doe Physicians 1 through 5 had duties to act prudently and to exercise reasonable and ordinary care, skill and diligence in connection with the procurement, evaluation, clearance, allocation, and/or transportation of the donor kidney transplanted into Mr. Kurowicki at UTMC on December 10, 2024.

147. John Doe Physicians 1 through 5 breached their duties owed to Barney C. Kurowicki in the following particulars:

a. By failing to make appropriate medical decisions about the care of Mr. Kurowicki, as pled herein;

b. By failing to take the necessary medical measures needed by Mr. Kurowicki as it related to his kidney transplant, as pled herein;

c. By failing to recognize and appreciate the significance of the risks associated with transplanting a kidney from a donor with rabies, as pled herein;

d. By accepting a donor kidney with rabies, as pled herein;

e. By failing to recognize the signs and symptoms of rabies in their evaluation of the donor kidney, as pled herein;

f. By failing to communicate with the OPO and all other health providers involved with the care of the donor and the donor kidney after it was harvested from the donor, as pled herein;

g. By failing to appreciate critical information regarding the donor and donor kidney, including that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients before being offered to Mr. Kurowicki, as pled herein;

h. By failing to further investigate critical information regarding the donor and donor kidney, including that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients before being offered to Mr. Kurowicki, as pled herein;

i. By accepting a donor kidney with the understanding that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients, as pled herein;

j. By failing to communicate to Mr. Kurowicki and/or his family that the kidney he was receiving was from a donor who was delirious before his death after being scratched by a skunk, and that the donor's kidney had been declined by a list of over 12,000 other potential recipients prior to being offered to him, as pled herein;

k. By attempting to match any recipient, and particularly Mr. Kurowicki, with a kidney that was previously declined by many prior potential recipients, indicating a potential problem with the kidney, as pled herein;

l. By attempting to match any recipient, and particularly Mr. Kurowicki, with a kidney that was harvested from a donor who was delirious before his death after being scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients, as pled herein;

m. By failing to collaborate as a team as it related to reconciling their knowledge of the donor and the donor kidney and Mr.

Kurowicki's clinical symptomology following his kidney transplant, as pled herein;

n. By failing to recognize Mr. Kurowicki's risk for developing rabies, as pled herein;

o. By failing to follow widely accepted protocols in place for accepting appropriate organs for safe transplantation, as pled herein;

p. By failing to communicate and collaborate effectively with other medical personnel, contributing to Mr. Kurowicki receiving a kidney that should never have been transplanted, as pled herein;

q. By failing to supervise all persons who allowed a kidney infected with rabies to be transplanted in Mr. Kurowicki, as pled herein;

r. By failing to properly and/or adequately monitor the competency of the members of Buckeye's medical, nursing and administrative staff and the adequacy of their knowledge as it relates to identifying risks with organ transplant, as pled herein;

s. By failing to properly and/or adequately select, train, and supervise their and Buckeye's respective agents, ostensible agents, servants, employees, and staff personnel, as pled herein; and,

t. In failing to establish, implement, or enforce proper protocols at Buckeye as it relates to organ procurement to ensure the care, treatment and safety of individuals such as Mr. Kurowicki;

u. In failing to establish, implement, or enforce proper policies and procedures at Buckeye regarding interdisciplinary communication, collaboration, and coordination between those involved in the procurement of organs, as pled herein;

v. In failing to establish, implement, or enforce proper protocols at Buckeye for organ procurement such that Mr. Kurowicki received a kidney via transplant that resulted in him contracting rabies, as pled herein;

w. In failing to properly instruct fellow medical care practitioners, physicians, fellows, residents, nursing staff, nurse practitioners, and physician's assistants with respect to identification and communication of potential risks of harm, including, but not limited to procuring a donor kidney infected with rabies, as pled herein;

x. In failing to appropriately communicate with the donor's care team to discuss patient symptoms and changes in condition as it relates to the appropriateness of organ procurement, as pled herein;

y. In failing to ensure that medical and administrative staff of Buckeye appropriately communicated with the donor's care team to discuss patient symptoms and changes in condition as it relates to the appropriateness of organ procurement, as pled herein;

z. In failing to ensure appropriate communication, collaboration, and coordination between medical and administrative staff with the organ transplant team, transplant physicians, floor nursing, hospitalist infectious disease, and/or third-party services, as pled herein;

aa. In failing to communicate appropriately and timely with other treating physicians, donor-hospital providers, organ procurement personnel, infectious-disease specialists, and transplant-team members regarding critical information affecting the safety and suitability of the donor kidney, as pled herein;

bb. In failing to detect and remedy deficiencies in the vetting and procurement of donor organs that resulted in Mr. Kurowicki receiving a kidney with rabies, as pled herein;

cc. In allowing systemic breakdowns in care and communication among multiple specialties involved in the procurement of a kidney infected with rabies, as pled herein;

dd. By failing to recognize and appreciate the significance of the risks associated with transplanting a kidney from a donor with rabies, as pled herein;

ee. By failing to recognize the signs and symptoms of rabies in its evaluation of the donor kidney, as pled herein;

ff. By failing to further investigate critical information regarding the donor and donor kidney, including that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients before being offered to Mr. Kurowicki, as pled herein;

gg. By accepting a donor kidney with the understanding that the donor was delirious before his death, he was recently scratched by a skunk, and that the kidney had been declined by a list of over 12,000 other potential recipients, as pled herein; and,

hh. By causing and increasing the harm to Mr. Kurowicki as a result of the negligence as set forth herein.

148. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 1 through 5, as set forth above, Mr. Kurowicki was injured as set forth herein and experienced conscious pain and suffering.

149. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 1 through 5, Mr. Kurowicki suffered from rabies, prolonged hospitalization, invasive surgery, multiple readmissions to the hospital, intensive treatment, and significant pain and suffering.

150. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 1 through 5, Barney C. Kurowicki has in the past experienced and endured pain, suffering, inconvenience, irritation, annoyance, fright, shock, worry, humiliation, anxiety, and other forms of distress; impairment of the movement of the various parts of his body; the loss of the ability to engage in his usual activities; the loss of income; the impairment of

earning capacity; the impairment of general health, strength and vitality; the requirement of additional treatments and medication; and, the loss of the enjoyment of the daily pleasures of life.

151. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 1 through 5, Plaintiff Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, seeks damages as follows:

a. Money expended for past and future medical services and supplies incident to the treatment he received as a result of the negligence of John Doe Physicians 1 through 5;

b. Shock, fright, anxiety, pain, suffering, embarrassment, humiliation, inconvenience, diminished enjoyment and quality of life, and nervousness suffered by Mr. Kurowicki as a result of the negligence of John Doe Physicians 1 through 5;

c. Any and all economic losses, including income loss, sustained by Mr. Kurowicki incident to treatment for his injuries; and,

d. Any and all other damages allowed under the law.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of John Doe Physicians 1 through 10, and demands compensatory damages from the Defendants in an amount in excess of $25,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**SEVENTH CAUSE OF ACTION AGAINST JOHN DOE PHYSICIANS 1 THROUGH 5**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. John Doe Physicians 1 through 5**

**WRONGFUL DEATH**

152. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

153. All of the actions and/or inactions of John Doe Physicians 1 through 5, as described above, as well as the breaches of the duty of care owed to Barney C. Kurowicki, increased the risk of harm to him and caused his death on January 30, 2025.

154. The persons entitled by law to recover damages for Barney C. Kurowicki's wrongful death, have sustained the following damages and losses:

a. All money expended for funeral and estate expenses because of the death of Mr. Kurowicki;

b. Loss of support from the reasonably expected earning capacity of the decedent;

c. Loss of services of the decedent;

d. Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

e. Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death; and,

f. The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of John Doe Physicians 1 through 10 and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**EIGHTH CAUSE OF ACTION AGAINST DEFENDANT LIFECENTER NORTHWEST**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. LifeCenter Northwest**

**RESPONDEAT SUPERIOR/VICARIOUS LIABILITY-MEDICAL NEGLIGENCE**

155. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

156. At all times material and relevant hereto, Defendant LifeCenter acted by and through its agents, ostensible agents, servants, and/or employees, including, but not limited to, John Doe Physicians 6 through 10.

157. The agents, ostensible agents, servants, and/or employees of Defendant LifeCenter had a duty to provide ordinary and reasonable care and care services to Barney C. Kurowicki.

158. Defendant LifeCenter is directly and vicariously liable for the acts, commissions, or omissions of its physicians, nursing staff, medical staff, and administration, including John Doe Physicians 6 through 10, as though Defendant LifeCenter performed the acts, commissions, and/or omissions itself.

159. Defendant LifeCenter, as well as its authorized agents, ostensible agents, servants, and/or employees, negligently breached their duties to Barney C. Kurowicki in the following particulars:

a. By failing to make appropriate medical decisions about the care of Mr. Kurowicki, as pled herein;

b. By failing to take the necessary medical measures needed by Mr. Kurowicki as it related to his kidney transplant, as pled herein;

c. By failing to recognize and appreciate the significance of the risks associated with transplanting a kidney from a donor with rabies, as pled herein;

d. By procuring a donor kidney with rabies, as pled herein;

e. By failing to recognize the signs and symptoms of rabies in its evaluation of the donor kidney, as pled herein;

f. By failing to communicate with the various medical providers involved with the care of the donor and the donor kidney both before and after it was harvested from the donor, as pled herein;

g. By failing to appreciate critical information regarding the donor and donor kidney, including that the donor was delirious before his death and that he was recently scratched by a skunk, as pled herein;

h. By ignoring the fact that the donor had an encounter with a skunk, ignoring that rabies was not ruled out and coordinating a transplant of the rabies infected kidney regardless, as pled herein;

i. By failing to further investigate critical information regarding the donor and donor kidney, including that the donor was delirious before his death and that he was recently scratched by a skunk, as pled herein;

j. By procuring a donor kidney with the understanding that the donor was delirious before his death and that he was recently scratched by a skunk, as pled herein;

k. By failing to communicate to Mr. Kurowicki and/or his family that the kidney he was receiving was from a donor who was delirious before his death after being scratched by a skunk, as pled herein;

l. By attempting to match any recipient, and particularly Mr. Kurowicki, with a kidney that was harvested from a donor who was delirious before his death after being scratched by a skunk, as pled herein;

m. By failing to collaborate as a team as it related to reconciling its knowledge of the donor and the donor kidney and Mr. Kurowicki's clinical symptomology following his kidney transplant, as pled herein;

n. By failing to recognize Mr. Kurowicki's risk for developing rabies, as pled herein;

o. By failing to follow widely accepted protocols in place for procuring appropriate organs for safe transplantation, as pled herein;

p. By failing to communicate and collaborate effectively with other medical personnel, contributing to Mr. Kurowicki receiving a kidney that should never have been transplanted, as pled herein;

q. By failing to supervise all persons who allowed a kidney infected with rabies to be procured and then transplanted in Mr. Kurowicki, as pled herein;

r. By failing to properly and/or adequately monitor the competency of the members of its medical, nursing and administrative staff and the adequacy of their knowledge as it relates to identifying risks with organ procurement and transplantation, as pled herein;

s. By failing to properly and/or adequately select, train, and supervise their respective agents, ostensible agents, servants, employees, and staff personnel, as pled herein; and,

t. By causing and increasing the harm to Mr. Kurowicki as a result of the negligence as set forth herein.

160. As a direct and proximate result of the negligence of Defendant LifeCenter authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki was injured and experienced conscious pain and suffering.

161. As a direct and proximate result of the negligence of Defendant LifeCenter authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki suffered from rabies, prolonged hospitalization, invasive surgery, multiple readmissions to the hospital, intensive treatment, and significant pain and suffering.

162. As a direct and proximate result of the negligence of Defendant LifeCenter's authorized agents, ostensible agents, servants, and/or employees, Barney C. Kurowicki has in the past experienced and endured pain, suffering, inconvenience, irritation, annoyance, fright, shock, worry, humiliation, anxiety, and other forms of distress; impairment of the movement of the various parts of his body; the loss of the ability to engage in his usual activities; the loss of income; the impairment of earning capacity; the impairment of general health, strength and vitality; the requirement of additional treatments and medication; and, the loss of the enjoyment of the daily pleasures of life.

163. As a direct and proximate result of the aforementioned acts and omissions of Defendant LifeCenter, Plaintiff Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, seeks damages as follows:

a. Money expended for past and future medical services and supplies incident to the treatment Mr. Kurowicki received as a result of the negligence of the Defendant;

b. Shock, fright, anxiety, pain, suffering, embarrassment, humiliation, inconvenience, diminished enjoyment and quality of life, and nervousness suffered by Mr. Kurowicki as a result of the negligence of the Defendant;

c. Any and all economic losses, including income loss, sustained by Mr. Kurowicki incident to treatment for his injuries; and

d. Any and all other damages allowed under any applicable law.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of the Defendant LifeCenter Northwest, and demands compensatory damages

from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**NINTH CAUSE OF ACTION AGAINST DEFENDANT LIFECENTER NORTHWEST**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. LifeCenter Northwest**

**CORPORATE NEGLIGENCE**

164. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

165. At all times material and relevant hereto, Defendant LifeCenter had a duty to exercise ordinary and reasonable care in the organization, management, and administration of its organization/company, including the duty to adopt, implement, and enforce policies and procedures reasonably designed to ensure that patients receive safe, timely, and competent medical care.

166. Defendant LifeCenter negligently breached its duties to Mr. Kurowicki in the following particulars:

b. In failing to establish, implement, or enforce proper protocols as it relates to organ procurement to ensure the care, treatment and safety of individuals such as Mr. Kurowicki;

b. In failing to establish, implement, or enforce proper policies and procedures regarding interdisciplinary communication, collaboration, and coordination between those involved in the procurement of organs, as pled herein;

c. In failing to establish, implement, or enforce proper protocols for organ procurement such that Mr. Kurowicki received a kidney via transplant that resulted in him contracting rabies, as pled herein;

d. In failing to properly instruct its medical care practitioners, physicians, fellows, residents, nursing staff, nurse

practitioners, and physician's assistants with respect to identification and communication of potential risks of harm, including, but not limited to procuring a donor kidney infected with rabies, as pled herein;

e. By having inappropriate policies, procedures and protocols that, somehow, someway, failed to identify and prevent transplantation of a rabies infected kidney – when the words "rabies" and "skunk" were actually present in the donor information, as pled herein;

f. In failing to ensure that medical and administrative staff appropriately communicated with the donor's care team to discuss patient symptoms and changes in condition as it relates to the appropriateness of organ procurement, as pled herein;

g. In failing to ensure appropriate communication, collaboration, and coordination between medical and administrative staff with the organ transplant team, transplant physicians, floor nursing, hospitalist infectious disease, and/or third-party services such as Defendant Buckeye, as pled herein;

h. In negligently supervising, hiring, credentialing, and/or retaining professional staff who assisted in the procurement of a kidney infected with rabies, including, but not limited the organ transplant administration, transplant physicians, other physicians, residents, nurse practitioners, physicians' assistants, nursing staff and administrative staff, as pled herein;

i. In failing to detect and remedy deficiencies in the vetting and procurement of donor organs that resulted in Mr. Kurowicki receiving a kidney with rabies, as pled herein;

j. In allowing systemic breakdowns in care and communication among multiple specialties involved in the procurement of a kidney infected with rabies, as pled herein;

k. In failing to have and follow policies and procedures concerning the investigation, approval and acceptance of procured donor organs that are concerning for risk of infectious disease, including, rabies, such that Mr.

Kurowicki received a kidney infected with rabies, as pled herein; and,

l. By improperly holding itself out to the community as an organ procurement organization having all the necessary and professional staff, procedures, equipment, and competence to properly procure organs for those in need of an organ transplant, and in particular, Mr. Kurowicki, as pled herein.

167. As a direct and proximate result of the negligence of Defendant LifeCenter, Barney C. Kurowicki was injured and experienced conscious pain and suffering.

168. As a direct and proximate result of the negligence of Defendant LifeCenter, Mr. Kurowicki suffered from rabies, prolonged hospitalization, invasive surgery, multiple readmissions to the hospital, intensive treatment, and significant pain and suffering.

169. As a direct and proximate result of the negligence of Defendant LifeCenter, Barney C. Kurowicki has in the past experienced and endured pain, suffering, inconvenience, irritation, annoyance, fright, shock, worry, humiliation, anxiety, and other forms of distress; impairment of the movement of the various parts of his body; the loss of the ability to engage in his usual activities; the loss of income; the impairment of earning capacity; the impairment of general health, strength and vitality; the requirement of additional treatments and medication; and, the loss of the enjoyment of the daily pleasures of life.

170. As a direct and proximate result of the negligence of Defendant LifeCenter, Plaintiff Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, seeks damages as follows:

a. Money expended for past and future medical services and supplies incident to the treatment Mr. Kurowicki received as a result of the negligence of the Defendant;

b. Shock, fright, anxiety, pain, suffering, embarrassment, humiliation, inconvenience, diminished enjoyment and

quality of life, and nervousness suffered by Mr. Kurowicki as a result of the negligence of the Defendant;

c. Any and all economic losses, including income loss, sustained by Mr. Kurowicki incident to treatment for his injuries; and,

d. Any and all other damages allowed under any applicable law.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of the Defendant LifeCenter Northwest, and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**TENTH CAUSE OF ACTION AGAINST DEFENDANT LIFECENTER NORTHWEST**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. LifeCenter Northwest**

**WRONGFUL DEATH**

171. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

172. All of the actions and/or inactions of Defendant LifeCenter, as described above, as well as the breaches of the duty of care owed to Barney C. Kurowicki, increased the risk of harm to him and caused his death on January 30, 2025.

173. The persons entitled by law to recover damages for Barney C. Kurowicki's wrongful death, have sustained the following damages and losses:

Should this Honorable Court apply the laws of the State of Washington:

a. Loss of victim's earnings;

b. Loss of victim's insurance benefits;

c. Medical and funeral expenses;

d. Loss of consortium damages;

e. Pain and suffering damages;

f. Loss of inheritance;

g. Loss of love and companionship; and,

h. Possible punitive damages.

Should this Honorable Court apply the laws of the State of Ohio:

a. All money expended for funeral and estate expenses because of the death of Mr. Kurowicki;

b. Loss of support from the reasonably expected earning capacity of the decedent;

c. Loss of services of the decedent;

d. Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

e. Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death; and,

f. The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of the Defendant LifeCenter Northwest and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**ELEVENTH CAUSE OF ACTION AGAINST JOHN DOE PHYSICIANS 6 THROUGH 10**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. John Doe Physicians 6 Through 10**

**MEDICAL MALPRACTICE/PROFESSIONAL LIABILITY**

174. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

175. John Doe Physicians 6 through 10 had duties to act prudently and to exercise reasonable and ordinary care, skill and diligence in connection with the procurement, evaluation, clearance, allocation, and transportation of the donor kidney transplanted into Mr. Kurowicki.

176. John Doe Physicians 6 through 10 breached their duties owed to Barney C. Kurowicki in the following particulars:

a. By failing to make appropriate medical decisions about the care of Mr. Kurowicki, as pled herein;

b. By failing to take the necessary medical measures needed by Mr. Kurowicki as it related to his kidney transplant, as pled herein;

c. By failing to recognize and appreciate the significance of the risks associated with transplanting a kidney from a donor with rabies, as pled herein;

d. By procuring a donor kidney with rabies, as pled herein;

e. By failing to recognize the signs and symptoms of rabies in their evaluation of the donor kidney, as pled herein;

f. By failing to communicate with the various medical providers involved with the care of the donor and the donor kidney both before and after it was harvested from the donor, as pled herein;

g. By failing to appreciate critical information regarding the donor and donor kidney, including that the donor was delirious before his death and that he was recently scratched by a skunk, as pled herein;

h. By ignoring the fact that the donor had an encounter with a skunk, ignoring that rabies was not ruled out and coordinating a transplant of the rabies infected kidney regardless, as pled herein;

i. By failing to further investigate critical information regarding the donor and donor kidney, including that the donor was delirious before his death and that he was recently scratched by a skunk, as pled herein;

j. By procuring a donor kidney with the understanding that the donor was delirious before his death and that he was recently scratched by a skunk, as pled herein;

k. By failing to communicate to Mr. Kurowicki and/or his family that the kidney he was receiving was from a donor who was delirious before his death after being scratched by a skunk, as pled herein;

l. By attempting to match any recipient, and particularly Mr. Kurowicki, with a kidney that was harvested from a donor who was delirious before his death after being scratched by a skunk, as pled herein;

m. By failing to collaborate as a team as it related to reconciling their knowledge of the donor and the donor kidney and Mr. Kurowicki's clinical symptomology following his kidney transplant, as pled herein;

n. By failing to recognize Mr. Kurowicki's risk for developing rabies, as pled herein;

o. By failing to follow widely accepted protocols in place for procuring appropriate organs for safe transplantation, as pled herein;

p. By failing to communicate and collaborate effectively with other medical personnel, contributing to Mr. Kurowicki receiving a kidney that should never have been transplanted, as pled herein;

q. By failing to supervise all persons at LifeCenter who allowed a kidney infected with rabies to be procured and then transplanted in Mr. Kurowicki, as pled herein;

r. By failing to properly and/or adequately monitor the competency of the members of LifeCenter's medical, nursing and administrative staff and the adequacy of their knowledge as it relates to identifying risks with organ procurement and transplantation, as pled herein;

s. By failing to properly and/or adequately select, train, and supervise their and LifeCenter's agents, ostensible agents, servants, employees, and staff personnel, as pled herein;

t. In failing to establish, implement, or enforce proper protocols at LifeCenter as it relates to organ procurement to ensure the care, treatment and safety of individuals such as Mr. Kurowicki;

u. In failing to establish, implement, or enforce proper policies and procedures regarding interdisciplinary communication, collaboration, and coordination between those involved in the procurement of organs, as pled herein;

v. In failing to establish, implement, or enforce proper protocols for organ procurement at LifeCenter such that Mr. Kurowicki received a kidney via transplant that resulted in him contracting rabies, as pled herein;

w. In failing to properly instruct fellow medical care practitioners, physicians, fellows, residents, nursing staff, nurse practitioners, and physician's assistants with respect to identification and communication of potential risks of harm, including, but not limited to procuring a donor kidney infected with rabies, as pled herein;

x. In failing to ensure appropriate communication, collaboration, and coordination between medical and administrative staff with the organ transplant team, transplant physicians, floor nursing, hospitalist infectious disease, and/or third-party services, as pled herein;

y. In failing to detect and remedy deficiencies in the vetting and procurement of donor organs that resulted in Mr. Kurowicki receiving a kidney with rabies, as pled herein;

z. In allowing systemic breakdowns in care and communication among multiple specialties involved in the procurement of a kidney infected with rabies, as pled herein;

aa. In failing to have and follow policies and procedures concerning the investigation, approval and acceptance of procured donor organs that are concerning for risk of infectious disease, including, rabies, such that Mr. Kurowicki received a kidney infected with rabies, as pled herein; and,

bb. By causing and increasing the harm to Mr. Kurowicki as a result of the negligence as set forth herein.

177. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 6 through 10, as set forth above, Mr. Kurowicki was injured as set forth herein and experienced conscious pain and suffering.

178. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 6 through 10, Mr. Kurowicki suffered from rabies, prolonged hospitalization, invasive surgery, multiple readmissions to the hospital, intensive treatment, and significant pain and suffering.

179. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 6 through 10, Barney C. Kurowicki has in the past experienced and endured pain, suffering, inconvenience, irritation, annoyance, fright, shock, worry, humiliation, anxiety, and other forms of distress; impairment of the movement of the various parts of his body; the loss of the ability to engage in his usual activities; the loss of income; the impairment of earning capacity; the impairment of general health, strength and vitality; the

requirement of additional treatments and medication; and, the loss of the enjoyment of the daily pleasures of life.

180. As a direct and proximate result of the negligent, reckless, careless, and wanton conduct of John Doe Physicians 6 through 10, Plaintiff Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, seeks damages as follows:

a. Money expended for past and future medical services and supplies incident to the treatment he received as a result of the negligence of John Doe Physicians 6 through 10;

b. Shock, fright, anxiety, pain, suffering, embarrassment, humiliation, inconvenience, diminished enjoyment and quality of life, and nervousness suffered by Mr. Kurowicki as a result of the negligence of John Doe Physicians 6 through 10;

c. Any and all economic losses, including income loss, sustained by Mr. Kurowicki incident to treatment for his injuries; and,

d. Any and all other damages allowed under the law.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of John Doe Physicians 6 through 10, and demands compensatory damages from the Defendants in an amount in excess of $25,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**TWELTH CAUSE OF ACTION AGAINST JOHN DOE PHYSICIANS 6 THROUGH 10**

**Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased v. John Doe Physicians 6 through 10**

**<u>WRONGFUL DEATH</u>**

181. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

182. All of the actions and/or inactions of John Doe Physicians 6 through 10, as described above, as well as the breaches of the duty of care owed to Barney C. Kurowicki, increased the risk of harm to him and caused his death on January 30, 2025.

183. The persons entitled by law to recover damages for Barney C. Kurowicki's wrongful death, have sustained the following damages and losses:

Should this Honorable Court apply the laws of the State of Washington:

a. Loss of victim's earnings;

b. Loss of victim's insurance benefits;

c. Medical and funeral expenses;

d. Loss of consortium damages;

e. Pain and suffering damages;

f. Loss of inheritance;

g. Loss of love and companionship; and,

h. Possible punitive damages.

Should this Honorable Court apply the laws of the State of Ohio:

a. All money expended for funeral and estate expenses because of the death of Mr. Kurowicki;

b. Loss of support from the reasonably expected earning capacity of the decedent;

c. Loss of services of the decedent;

d. Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training,

and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

e. Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death; and,

f. The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, claims damages of John Doe Physicians 6 through 10 and demands compensatory damages from the Defendant in an amount in excess of $75,000.00, together with interest, costs of suit, and any other relief this Honorable Court deems appropriate to recover for which this suit is filed.

**DEMAND FOR JURY TRIAL**

184. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

185. Plaintiff hereby demands a trial by jury on all issues so triable in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Kathlene L. Kurowicki, Individually and as Personal Representative of the Estate of Barney Chester Kurowicki a/k/a Barney C. Kurowicki, Deceased, respectfully prays that this Honorable Court enter judgment in Plaintiff's favor and against Defendants Buckeye Transplant Services, LLC; John Doe Physician 1 through 5; LifeCenter Northwest; and John Doe Physicians 6 through 10, jointly and severally, and award the following relief:

A. Compensatory damages in an amount to be determined at trial for the wrongful death of Barney C. Kurowicki, including but not limited to damages sustained by Barney C. Kurowicki's heirs for mental anguish and

loss of support, services, society, companionship, care, assistance, attention, protection, advice, guidance, training, and counsel of Decedent;

B. Compensatory damages for the conscious pain and suffering, emotional distress, and other injuries sustained by Barney C. Kurowicki prior to his death as a result of Defendants' actions and/or omissions;

C. Damages for medical, funeral, and burial expenses arising from the Defendants' negligence;

D. Damages arising from Defendants' corporate negligence, including failure to establish and enforce appropriate safety and screening protocols for organ procurement and transplantation, and vicarious liability for the negligent actions and omissions of their agents, ostensible agents, servants, and employees who were then and there acting within the course and scope of their employment;

E. Punitive and exemplary damages arising from the Defendants' conscious, wanton, and reckless disregard for the health and safety of transplant recipients;

F. Pre-judgment and post-judgment interested as allowed by law;

G. Costs of suit as permitted by law;

H. All other damages otherwise available and recoverable under applicable law; and,

I. Such other and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

ROBERT PEIRCE & ASSOCIATES, P.C.

By:______________________

ROBERT F. DALEY, ESQUIRE
Ohio I.D. No.: 079006
Robert Peirce & Associates, P.C.
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Phone: (412) 281-7229
Fax: (412) 281- 4229
Email: bdaley@peircelaw.com
Counsel for Plaintiff